TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00386-CR







Kimberly Ann Smith, Appellant



v.



The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY,


NO. 46,691, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING







 Appellant Kimberly Ann Smith appeals her conviction for driving while intoxicated. See
Tex. Penal Code Ann. § 49.04 (West 1994 & Supp. 1998). After a jury found Smith guilty, the trial court
assessed punishment at a $500 fine and confinement for 180 days, but probated the confinement for a
period of two years. We will affirm the conviction.


BACKGROUND

 In the early morning hours of May 19, 1996, a San Marcos Police Officer who was on
patrol stopped Smith, a college student, for running a red light. The officer performed sobriety tests on both
Smith and the male passenger in her car. The officer allowed the passenger to leave the scene but arrested
Smith for driving while intoxicated. The officer took Smith to the police station where she declined to
submit to a breath test. Smith did, however, perform sobriety tests while the officer videotaped her. 

 At trial, the State presented its case through the testimony of the arresting officer and the
videotape. Smith testified on her own behalf and called an expert witness who testified about the rate the
human body metabolizes alcohol. The jury convicted Smith and the court assessed punishment. Smith
appeals in seven points of error that concern the legal sufficiency of the evidence, the admissibility of certain
evidence, and omissions from the jury charge.


DISCUSSION

Evidence of Extraneous Offense

 Smith's first point of error relates to the arresting officer's testimony about the details of
the traffic stop, specifically his testimony about impounding Smith's car immediately after her arrest. In
response to the prosecutor's question, "After you had released [the passenger in Smith's car] did you
perform any other procedures there at the scene of the arrest?," the officer responded:


Yes, sir. The vehicle was impounded. And [two other officers] had arrived sometime
during the field test procedures, and [one of them] did the impound of the vehicle.


As I went up to get Ms. Smith's purse, which she had left on the front seat, there's a little
hand -- hand purse, I believe, I noticed that there was -- it was open. And even though
I had her driver's license in my hand I saw a Texas driver's license in the -- 


At this point, Smith objected to the officer's testimony "under 401, 403, 404(a) and 404(b)" and asked
the trial court to apply a "balancing test" to determine whether the information was admissible before the
jury. Smith contended that the State was attempting to present evidence of an extraneous offense,
specifically the prohibition on holding more than one currently valid driver's license. See Tex. Transp.
Code Ann. § 521.451(5) (West 1998); see also Tex. R. Evid. 404(b). The prosecutor offered to rephrase
the question, the court overruled Smith's objection, and the testimony continued without reference to the
contents of Smith's purse.

 In her first point of error, Smith argues the trial court "erred in admitting an extraneous
offense upon timely objection and request for a balancing test." We disagree with Smith's argument
because the trial court did not admit any evidence of an extraneous offense. The officer testified that he
saw "a Texas driver's license" but did not finish his statement to explain exactly where the license was,
whose the license was, or most importantly, whether it was current. The jury might reasonably have
inferred from the officer's statement that an extra driver's license had been in Smith's purse, and that it
might have belonged to her. The officer's statements did not at all indicate, however, that the extra license
was current. The law referenced by Smith is not violated unless the two driver's licenses are both current. 
See Tex. Transp. Code Ann. § 521.451(5). 

 Under analogous circumstances, the court of criminal appeals has held that the prohibition
on admitting evidence of extraneous offenses does not come into play unless the evidence establishes that
an offense was committed or that the defendant was connected to the offense. See Harris v. State, 738
S.W.2d 207, 224 (Tex. Crim. App. 1986), cert. denied, 484 U.S. 872 (1987). In Harris, the defendant
was tried for capital murder. A witness for the State testified that the defendant left the scene of the murder
with two other men, one of whom had a shotgun; the group parked the car, left the engine running, returned
five minutes later, and sped away. The defendant contended this evidence suggested that he had been
involved in an extraneous offense, a robbery, after the murder. The court held this testimony did not run
afoul of the extraneous offense rule, even though it invited the jury to speculate about whether the defendant
had committed an extraneous offense. Id. at 224. 

 We hold that the evidence about which Smith complains does nothing more than invite
speculation about the possibility that Smith had committed some extraneous offense involving the second
driver's license. The evidence does not establish that Smith committed an extraneous offense. Therefore,
the court did not err in overruling her objection. 

 We also note that Smith elicited the same facts from the officer on cross-examination, and
she did not object to his answer or ask the court to strike the testimony. She, therefore, cured any possible
error. See Sweeten v. State, 693 S.W.2d 454, 456 (Tex. Crim. App. 1985); Bush v. State, 697 S.W.2d
397, 404 (Tex. Crim. App. 1985). We overrule Smith's first point of error.


Instruction on Evidence Obtained in Violation of Law

 Smith's second point of error focuses on the officer's pre-arrest questioning of her at the
scene of the traffic stop. At trial, Smith contended she was under custodial interrogation at the scene and
that the officer's testimony was inadmissible because she had not waived her rights. The court allowed the
officer to testify about the statements Smith made at the scene.

 Smith then requested a jury instruction under Texas Code of Criminal Procedure article
38.23, to inform the jury that they could disregard any evidence obtained in violation of her rights. Article
38.23 prohibits the admission in a criminal trial of evidence obtained in violation of the constitutions or laws
of Texas or the United States. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 1998). The statute
further provides:


In any case where the legal evidence raises an issue hereunder, the jury shall be instructed
that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of
the provisions of this Article, then and in such event, the jury shall disregard any such
evidence so obtained.



Id. The trial court denied the request. This ruling is the basis of Smith's second point of error. 

 The evidence does not support Smith's contention that she was under custodial
interrogation at the scene. The officer testified that he initially stopped Smith for running a red light, but that
once he approached her and observed that her speech was slurred, he began to suspect that she might be
intoxicated. He asked Smith some questions, which she answered, and asked her to perform field sobriety
tests, which she performed. The officer observed that Smith "was unsteady," "wobbled," "stumbled," and
had trouble following instructions. The officer also noted that her eyes exhibited nystagmus (involuntary
oscillation) when following a stimulus, and that her pupils were constricted. After administering the tests
and talking with Smith, the officer decided he had probable cause to arrest her and did so. The officer
testified he was initially investigating his suspicion, as opposed to acting on probable cause, when he
questioned Smith at the scene. He testified that because Smith was a stranger to him, he needed to
question her to determine whether her speech was slurred because of intoxication or some other reason,
such as a speech impediment. According to the officer, he concluded she was intoxicated only after he
questioned her and observed her perform the field sobriety tests. 

 Smith did not cross-examine the officer on this issue. She later testified that she did not
remember any of her conversation with the officer at the scene. She did not, therefore, controvert the
officer's testimony herself and she did not present any other evidence on the issue. 

 When neither cross-examination nor the defendant's own proof controverts the testimony
of an officer on the issue of custodial interrogation, a trial court does not err in refusing to submit an article
38.23(a) instruction to the jury. Murphy v. State, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982) (citing
Rose v. State, 470 S.W.2d 198 (Tex. Crim. App. 1981)). Because the evidence did not raise the issue
here, we hold the trial court did not err in refusing the requested instruction. We overrule Smith's second
point of error.


Admissibility of Silent Videotape

 Points of error three through five relate to the admissibility of the videotape the officer
recorded of Smith at the station. According to the officer, he took Smith to a videotaping room, read her
her rights, and Smith invoked her right to an attorney. The officer testified that he did not ask Smith
questions designed to elicit testimonial statements after she invoked her right to counsel. He did, however,
ask her to perform sobriety tests, which she agreed to do. 

 The officer attempted to make both audio and video recordings of Smith while she was in
the room. However, the recording device did not record an audio track. For that reason, the jury only
reviewed the video portion of the tape. Before the video was played to the jury, Smith objected to its
admissibility on two grounds: (1) it contained "testimonial" statements obtained in violation of her rights to
an attorney and to remain silent, and (2) the State had not properly authenticated the tape. The court
overruled the objections.

 In points of error three and five, Smith argues the trial court erred in admitting the videotape
because it was recorded without her attorney present and contained "testimonial" statements. A visual
depiction of a defendant arrested for driving while intoxicated does not constitute testimonial evidence
compelled in violation of the defendant's federal or state constitutional rights to remain silent and to have
an attorney. Miffleton v. State, 777 S.W.2d 76, 81 (Tex. Crim. App. 1989); Fierro v. State, No. 03-96-637, slip op. at 8 (Tex. App.--Austin Apr. 9, 1998, no pet. h.). We overrule points of error three and
five.

 In point of error four, Smith argues the trial court erred in admitting the videotape because
the State did not properly authenticate it first. We review the trial court's decision not to suppress evidence
for an abuse of discretion. Williams v. State, 535 S.W.2d 637, 639-40 (Tex. Crim. App. 1976). Both
parties urge us to determine whether the State properly authenticated the silent videotape by applying the
test for proper authentication of a videotape with sound. That test, originally set forth in Edwards v. State,
551 S.W.2d 731 (Tex. Crim. App. 1977), consists of seven factors:


(1) a showing that the recording device was capable of taking testimony;

(2) a showing that the operator of the device was competent;

(3) establishment of the authenticity and correctness of the recording;

(4) a showing that the changes, additions, or deletions have not been made;

(5) a showing of the manner of the preservation of the recording;

(6) identification of the speakers; and

(7) a showing that the testimony elicited was voluntarily made without any kind of
inducement.


Edwards, 551 S.W.2d at 733, cited in Roy v. State, 608 S.W.2d 645, 649 (Tex. Crim. App. 1980). 

 We decline to apply this test for two reasons. First, the Edwards test has been superseded
by the adoption of the Texas Rules of Criminal Evidence, now the Texas Rules of Evidence. See Tex. R.
Evid. 901; Angleton v. State, No. 1536-97, slip op. at 9 (Tex. Crim. App. May 27, 1998); see also
Stapleton v. State, 868 S.W.2d 781, 785-86 (Tex. Crim. App. 1993) (holding that Edwards is "no
longer needed as an authoritative guide for admissibility of 'electronic recordings,' including 'sound
recordings'"); see also Leos v. State, 883 S.W.2d 209, 211-12 (Tex. Crim. App. 1994) (holding that
Rule 901 is controlling authority concerning authentication of voice recordings). 

 Second, and of greater importance to the determination of this case, the court of criminal
appeals has clearly distinguished the test for the admissibility of audio-visual recordings from the test for
the admissibility of silent video recordings. Silent videos are akin to still photographs, and the same
authentication requirements apply to both. Huffman v. State, 746 S.W.2d 212, 221-23 (Tex. Crim. App.
1988). Those authentication requirements are quite different from the Edwards test:


It is common knowledge that the predicate for the introduction of a photograph requires
the proof of (1) its accuracy as a correct representation of the subject at a given time, and
(2) its material relevance to a disputed issue . . . all that is required of a witness who
observed the object or scene depicted with his naked eye is testimony that the photograph
truly and accurately represents that object or scene. 


Id. at 222 (quoting Williams v. State, 461 S.W.2d 614, 616 (Tex. Crim. App. 1970)). These
requirements are, however, altogether consistent with Rule 901's requirement that authentication is satisfied
"by evidence sufficient to support a finding that the matter in question is what its proponent claims." See
Tex. R. Evid. 901.

 The officer who videotaped Smith testified that the video recording accurately depicted the
events of the evening as he remembered them. Smith did not dispute the officer's testimony and presented
no evidence that the tape had been altered. Therefore, we cannot say the trial court abused its discretion
in overruling Smith's authentication objection.

 Smith also complains in this point of error that she somehow suffered harm because the
video recorder was not operating well enough to record an audio track. Generally, a defendant's
invocation of her right to counsel and subsequent oral testimonial statements taken as a result of custodial
interrogation are inadmissible as evidence of guilt of driving while intoxicated. Hardie v. State, 807
S.W.2d 319, 322 (Tex. Crim. App. 1991) (citing Miffleton v. State, 728 S.W.2d 880, 884 (Tex.
App.--Austin 1987), aff'd, 777 S.W.2d 76 (Tex. Crim. App. 1989)); see also Fierro, slip op. at 3. We
hold the trial court did not err in admitting the silent video in evidence and we overrule point of error four.


Instruction on Defense of Involuntary Intoxication

 In point of error six, Smith argues the trial court erred in refusing to submit a requested
instruction that explained to the jury that, for purposes of driving while intoxicated, intoxication must be
voluntary. The State contends in response that Smith did not adequately preserve this point for review
because she failed to spell out specifically the instruction she was requesting, and simply told the trial court
the general substance of the instruction she was requesting. See Tex. Code Crim. Proc. Ann. arts. 36.14
(West Supp. 1998) & 36.15 (West Supp. 1998). 

 Even assuming that Smith's request for the instruction was specific enough and met the
requirements of the Code of Criminal Procedure, we conclude the trial court did not err in refusing to give
the instruction. Involuntary intoxication is a defense to criminal culpability. Torres v. State, 585 S.W.2d
746, 749 (Tex. Crim. App. 1979). The offense of driving while intoxicated does not include as an element
a culpable mental state. Ex Parte Ross, 522 S.W.2d 214, 215-17 (Tex. Crim. App. 1975), cited in
Sanders v. State, 936 S.W.2d 436, 438 (Tex. App.--Austin 1996, pet. ref'd). Therefore, the defense
of involuntary intoxication is not relevant to the offense of driving while intoxicated. Aliff v. State, 955
S.W.2d 891, 893 (Tex. App.--El Paso 1997, no pet.).

 Furthermore, if involuntary intoxication were a defense to driving while intoxicated, and
assuming without deciding that the evidence raised the issue of involuntary intoxication, we would not
reverse Smith's conviction upon this record. When, as in this case, the defendant objected to the alleged
charge error at trial and the alleged error concerns the omission of a non-statutory instruction, we review
the record as a whole to determine whether the omission caused "some harm." Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984), cited in Posey v. State, No. 427-96, slip op. at 10 n.9, 12
n.12 (Tex. Crim. App. Mar. 25, 1998) (confirming continued validity of Almanza analytical framework
in cases in which a trial court rejects a defendant's timely request for an instruction on a defensive theory). 
This record does not reveal that Smith suffered harm as a result of the omission of the requested instruction.

 Smith contends the following evidence supports her affirmative defense that someone
caused her to ingest a drug other than alcohol without her knowledge: (1) the arresting officer noted
Smith's pupils were constricted and not reactive to light at the scene; (2) the officer testified that alcohol
does not cause a person's pupils to constrict; (3) Smith testified at trial that she had not voluntarily taken
any controlled substances the night of the offense; (4) Smith went to a fraternity house the evening of the
offense, and she remembers the events that occurred before she went to the house but not after; (5) Smith
did not know the correct name of the male passenger who was in her car when the officer stopped her; and
(6) she had been to a park with the passenger and had dirt on the back of her shirt afterward. This
evidence is tenuous at best and does not establish that Smith had a drug in her system, other than alcohol.

 Other evidence reveals that certain legal, commonly taken, over-the-counter drugs can
cause a person's pupils to constrict. In response to the officer's inquiry about whether she was taking any
medications, Smith answered "Advil" and ibuprofen. She did not, however, deny at the scene or at trial
that she had taken other medications. In other words, the sparse record on this issue does not reveal that
Smith's constricted pupils were the result of involuntary conduct. Furthermore, there is no evidence that
Smith manifested other physical symptoms of intoxication that were not incident to the ingestion of alcohol. 
Smith admitted that she weighed about one hundred pounds, went to two parties, voluntarily drank at least
five or six drinks over the course of the evening, and may have had more because she was not keeping
track of the number of drinks she had before she drove through the red light. Moreover, the officer
detected a strong odor of alcohol when he stopped Smith. We hold that the omission of the defense of
involuntary intoxication, even if it were error, did not harm Smith. Accordingly, we overrule point of error
six. 


Legal Sufficiency of the Evidence

 In her final point of error, Smith contends the evidence is legally insufficient to support the
jury's determination of guilt. Specifically, Smith attacks the sufficiency of the evidence on the issue of
whether she was "operating" a motor vehicle while intoxicated. See Tex. Penal Code Ann. § 49.04. When
reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the
verdict and determine if a rational juror could have found the elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App.
1981). The test for the legal sufficiency of the evidence is the same for cases proven by direct or
circumstantial evidence. Geesa v. State, 820 S.W.2d 154, 156-61 (Tex. Crim. App. 1991). (1)

 The arresting officer testified that he saw a car drive through a red light, he immediately
pursued the car, followed it until it stopped in a parking lot, and then observed Smith sitting behind the
wheel. A rational juror could conclude that Smith was the person operating the vehicle. We overrule point
of error seven.


CONCLUSION

 Having overruled all of Smith's points of error, we affirm the judgment of the trial court.



 _____________________________________________

 Lee Yeakel, Chief Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed

Filed: June 11, 1998

Do Not Publish
1. Smith does not acknowledge this rule, but instead relies upon the now defunct rule that in cases of
circumstantial evidence, the State had to disprove all reasonable hypotheses except guilt. For cases tried
after the court of criminal appeals' decision in Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991),
the State no longer need disprove all reasonable alternative hypotheses.



fense that someone
caused her to ingest a drug other than alcohol without her knowledge: (1) the arresting officer noted
Smith's pupils were constricted and not reactive to light at the scene; (2) the officer testified that alcohol
does not cause a person's pupils to constrict; (3) Smith testified at trial that she had not voluntarily taken
any controlled substances the night of the offense; (4) Smith went to a fraternity house the evening of the
offense, and she remembers the events that occurred before she went to the house but not after; (5) Smith
did not know the correct name of the male passenger who was in her car when the officer stopped her; and
(6) she had been to a park with the passenger and had dirt on the back of her shirt afterward. This
evidence is tenuous at best and does not establish that Smith had a drug in her system, other than alcohol.

 Other evidence reveals that certain legal, commonly taken, over-the-counter drugs can
cause a person's pupils to constrict. In response to the officer's inquiry about whether she was taking any
medications, Smith answered "Advil" and ibuprofen. She did not, however, deny at the scene or at trial
that she had taken other medications. In other words, the sparse record on this issue does not reveal that
Smith's constricted pupils were the result of involuntary conduct. Furthermore, there is no evidence that
Smith manifested other physical symptoms of intoxication that were not incident to the ingestion of alcohol. 
Smith admitted that she weighed about one hundred pounds, went to two parties, voluntarily drank at least
five or six drinks over the course of the evening, and may have had more because she was not keeping
track of the number of drinks she had before she drove through the red light. Moreover, the officer
detected a strong odor of alcohol when he stopped Smith. We hold that the omission of the defense of
involuntary intoxication, even if it were error, did not harm Smith. Accordingly, we overrule point of error
six. 


Legal Sufficiency of the Evidence