

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00046-CR

**LINDA CAROL WILCHER AKA LINDA CAROL SOUTH,**
                                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                    **Appellee**

**From the County Court at Law No 1**
**McLennan County, Texas**
**Trial Court No. 2015-0567-CR1**

## MEMORANDUM OPINION

In two issues, appellant, Linda Wilcher a/k/a Linda South, challenges her conviction for driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2016). Specifically, appellant contends that: (1) there is insufficient evidence to support her conviction; and (2) the trial court erred in failing to submit an instruction on voluntariness in the charge. We affirm.

# I.    SUFFICIENCY OF THE EVIDENCE

In her first issue, appellant contends that the evidence is legally insufficient to support her conviction because the State presented no evidence that she voluntarily drove while intoxicated.  We disagree.

## A.    Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."  *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted.  *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.  Furthermore, direct and circumstantial evidence are

treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

**B.      Discussion**

Section 49.04(a) of the Penal Code provides that: "[a] person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a). A person is intoxicated if she has a blood-alcohol concentration of 0.08 or higher or if she does not have the normal use of her mental or physical faculties. *Id.* § 49.01(2) (West 2011). In cases not involving alcohol, such as this case, the latter standard is applicable. *See id.*; *see also Farmer v. State*, 411 S.W.3d 901, 905 (Tex. Crim.

App. 2013). "The offense of driving while intoxicated is a strict liability crime meaning that it does not require a specific mental state (e.g., intentionally, knowingly, or recklessly intending to operate a motor vehicle while intoxicated), only a person on a public roadway voluntarily operating a motor vehicle while intoxicated." *Farmer*, 411 S.W.3d at 905 (citing *Owen v. State*, 525 S.W.2d 164, 164-65 (Tex. Crim. App. 1975); *Ex parte Ross*, 522 S.W.2d 214, 217-18 (Tex. Crim. App. 1975), *overruled on other grounds by Ex parte McCain*, 67 S.W.3d 204 (Tex. Crim. App. 2002)).

Nevertheless, in *Farmer*, the Court of Criminal Appeals noted:

Section 6.01(a) of the Texas Penal Code places a restriction on offenses listed in the Penal Code. *See* TEX. PENAL CODE [ANN.] § 6.01(a) [West (2011)]. In relevant part, it states that "a person commits an offense only if he voluntarily engages in conduct, including and act" or "an omission." *Id.* Thus, to be guilty of driving while intoxicated, the accused must meet the requirements of the driving-while-intoxicated statute and have voluntarily engaged in an act or omission. *See* TEX. PENAL CODE [ANN.] §§ 6.01(a), 49.04(a). . . .

We have also stated that voluntariness, as described by Section 6.01(a), "refers only to one's own physical body movements[,]" and that a movement is considered involuntary only if that movement is "the nonvolitional result of someone else's act, [was] set in motion by some independent non-human force, [was] created by a physical reflex or convulsion, or [was] the product of unconsciousness, hypnosis or other nonvolitional impetus . . . ." [*Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003)] Thus, a voluntary act that comprised a portion of the commission of the offense is sufficient to satisfy the requirement of Section 6.01(a), even if that voluntary act was accidental or the consequences of that act were unintended.

*Id.* at 905-06.

On September 8, 2013, Crystal Davidson noticed "there was a car that had pulled out in front of me. And they were swerving on both sides of the road, kind of weaving back and forth and speeding up and slowing down" while driving on Losak Road in Lorena, Texas. Davidson followed the car, which was later identified as appellant's, for ten to fifteen minutes. Davidson testified that she also saw the car run "a stop sign or almost hit a car." At this point, Davidson called 911.

Officer Jeffrey Foley, formerly with the Hewitt Police Department, responded to the scene. When describing the video of the incident from the in-car dash camera, Officer Foley noted the following:

> At that point, I had seen the car. I was traveling to get to the car. There was some distance between us. When you start seeing vehicles moving out of my way, that's when I activated the emergency lights on my car. And I catch up to the driver. She was driving slower than the posted speed limit—well below; probably from my estimate, 30 or 35 miles an hour in a 50 mile an hour zone. She was swerving onto the right shoulder of the roadway. By the time I had gotten close enough to her to actually initiate the stop, she was turning on to Imperial, right there next to Coca-Cola and Wal-Mart. She was unable to negotiate the right-hand turn onto Imperial and turned too wide. And if you saw the green motorcycle, she almost struck the motorcycle when she made the turn. . . .

Eventually, Officer Foley initiated a stop of appellant's vehicle. Appellant crossed five lanes of traffic and drove dangerously into a parking lot. After both vehicles had stopped, Officer Foley approached appellant's vehicle and noticed that:

> She was—her—like I said in the video, her speech was very slurred. She was unable to complete sentences. She would start to say a sentence and then just stop mid-sentence or mid-word and then just completely rephrase that sentence. She just was—her face was—I'm sorry. Her eyes were

droopy, bloodshot. She just appeared to be having a hard time talking, in general.

Officer Foley later administered field-sobriety tests, all of which appellant failed. Specifically, appellant showed six of six clues on the horizontal-gaze-nystagmus test, and she was unable to complete the walk-and-turn and one-leg-stand tests.

Texas Highway Patrol Trooper Jarrod Hubbard, a drug-recognition expert, testified that appellant told him that she was taking Xanax and Advil. Appellant told Trooper Hubbard that she had voluntarily taken the medications "around 6:30 a.m. that morning." Trooper Hubbard noted that he evaluated appellant at 12:20 p.m. on the same day. Later in his testimony, Trooper Hubbard stated that he believed that appellant had lost the normal use of her mental and physical faculties.

Appellant testified on her own behalf. During her testimony, appellant admitted that, on the day in question, she operated a motor vehicle on a public roadway; that she did not have normal use of her mental and physical faculties; and that she was intoxicated. Appellant also acknowledged that she voluntarily took her medicine on the day in question, but that she did not take the medications any differently than she usually did. Appellant denied overdosing, taking the wrong medications, or that the medication had ever done "anything weird to [her]." On cross examination, appellant noted that she also took Tramadol in addition to her Xanax prescription. Both of these medications warn against operating heavy machinery until the patient understands the effects of the medications on their body.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational juror could have concluded beyond a reasonable doubt that appellant voluntarily took her medicine, was intoxicated, and operated a motor vehicle in a public place on the day in question. *See id.* §§ 6.01(a), 49.04(a); *Farmer*, 411 S.W.3d at 905; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894. Accordingly, we hold that the evidence is sufficient to support appellant's conviction. We overrule appellant's first issue.

## II.    THE JURY CHARGE

In her second issue, appellant argues that the trial court erred in denying her request for a charge instruction regarding the voluntariness of her conduct where she presented evidence that she did not voluntarily drive while intoxicated.

### A.    Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal

for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Here, appellant contends that the evidence demonstrated that she was entitled to an instruction on voluntariness under Section 6.01(a). At trial, appellant requested in writing and on the record a Section 6.01(a) instruction in the charge, which was denied by the trial court.[1]

The district court shall provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The law applicable to the case includes "statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence." *Walters v. State*, 247 S.W.3d 204, 208-09 (Tex. Crim. App. 2007). "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 658-59 (Tex. Crim. App. 2007); *see* TEX. PENAL CODE ANN. § 2.03(c) (West

---

[1] Appellant requested the following instruction with regard to voluntariness:

You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. A person involuntarily takes an intoxicant if he takes a medication according to a physician's prescription.

Now, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant did operate a motor vehicle in a public place while intoxicated but you further believe from the evidence that operating the vehicle was not the result of any voluntary act or conduct on the part of the defendant, of if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict not guilty.

2011) ("The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense.").

"[W]e do not apply the usual rule of appellate deference to trial court rulings when reviewing a trial court's decision to deny a requested defensive instruction." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). Rather, "we view the evidence in the light most favorable to the defendant's requested submission." *Id.* A defendant is entitled to a jury instruction on a defensive issue if it is raised by the evidence, regardless of the strength or credibility of that evidence. *Farmer*, 411 S.W.3d at 906 (citing *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999)). However, if the evidence, viewed in the light most favorable to the defendant, does not raise the defense, an instruction on that defense is not required. *See id.*

## B.     Discussion

As noted in *Farmer*, "[a]ll that is necessary to satisfy Section 6.01(a) of the Texas Penal Code is that the commission of the offense *included* a voluntary act." 411 S.W.3d at 907 (citing *Rogers*, 105 S.W.3d at 638) (emphasis in original). In this case, appellant makes no allegation that her arm movement to pick up and ingest the Ambien, Tramadol, and/or Advil was the result of anything other than her own conscious action, and no other evidence at trial supported her request for a jury instruction on voluntariness. *See id.* at 907-08. Stated another way, this is not a case of unknowingly or unwillingly taking pharmaceutical medications; rather, this is a case of knowingly taking pharmaceutical

medication but mistakenly failing to comprehend or anticipate the effect such medications would have on her body. *See id.* Indeed, appellant admitted at trial that she voluntarily took the medications and that she was intoxicated and had no control over her mental and physical faculties while she was driving. Viewing the evidence in the light most favorable to appellant, we cannot say that the evidence raised the issue of whether appellant voluntarily ingested the medications. *See Shaw*, 243 S.W.3d at 658-59; *Bufkin*, 207 S.W.3d at 782; *see also Farmer*, 411 S.W.3d at 907-08. As such, we conclude that the trial court properly denied appellant's request to include a defensive instruction on voluntariness. *See Farmer*, 411 S.W.3d at 907-08. We overrule appellant's second issue.

## III.    CONCLUSION

Having overruled both issues on appeal, we affirm the judgment of the trial court.



AL SCOGGINS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed December 28, 2016
Do not publish
[CR25]

